IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WALI SHABAZZ, | : | CIVIL ACTION |
| | : | No. 13-2367 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SUPERINTENDENT BURNS, et al., | : | |
| | : | |
| Respondents. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                    April 24, 2015

Wali Shabazz ("Petitioner") is a prisoner serving a
life sentence at State Correctional Institution—Forest in
Marienville, Pennsylvania. Petitioner filed an application
seeking relief through a writ of habeas corpus ("Habeas
Petition") pursuant to 28 U.S.C. § 2254, based on claims of an
erroneous trial court instruction, prosecutorial misconduct, and
ineffective assistance of counsel. Magistrate Judge Carol Sandra
Moore Wells ("Judge Wells") recommended denial of the Habeas
Petition without an evidentiary hearing or certificate of
appealability. Petitioner, proceeding pro se, now raises a number
of objections to Judge Wells' recommendations. For the reasons
that follow, the Court will adopt Judge Wells' Report and
Recommendation ("R&R"), and will deny habeas relief.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**[1]

The Pennsylvania Superior Court summarized the facts leading to Petitioner's conviction and sentence as follows:

The record reveals that at 5:30 p.m. on July 27, 2002, Kenneth Cuff was entertaining two guests in the living room of his home at 5064 Ogden Street in Philadelphia when the victim, Andre Thompson, who resided with Mr. Cuff, opened the door, sat down next to Mr. Cuff, and announced, "[t]hat doggone Wali is something else." N.T. Trial, 6/23/04, at 86. Approximately five minutes later, [Petitioner] burst through the front door carrying a large revolver and asked, "Where is he at?" Id. at 93. Mr. Cuff replied, "Who are you talking about?" Id. Without answering, [Petitioner] walked over to Mr. Thompson and struck him in the face with the revolver. Mr. Cuff backed away and watched as the two men struggled for control of the gun. [Petitioner] eventually broke free, stepped back, and fired one shot at close range, wounding Mr. Thompson in the abdomen. [Petitioner] fled the scene, and rescue personnel were summoned to the house.

Mr. Thompson was transported to the hospital of the University of Pennsylvania where he died approximately three hours later. An autopsy revealed that the victim bled to death because the bullet pierced several organs and a series of "major blood vessels," resulting in massive blood loss. N.T. Trial, 6/25/04, at 29. The medical examiner also observed a laceration near Mr. Thompson's right eyebrow, which was consistent with an injury inflicted by a blunt object such as a steel handgun. Id. at 32-34.

During the ensuing investigation, Mr. Cuff gave police a physical description of [Petitioner], indicated that the shooter's name was "Wali," and identified [Petitioner] from a photograph that was

_____

[1]     The factual and procedural circumstances set forth herein are drawn from Judge Wells' R&R, which in turn gleaned them from undisputed facts set forth in Petitioner's Habeas Petition, his Memorandum of Law, the Commonwealth's Response (and its accompanying exhibits), and Petitioner's Traverse.

> shown to him by Philadelphia Police Detective Matthew
> Myles. N.T. Trial, 6/23/04, at 45. [Petitioner] was
> subsequently arrested, and the case proceeded to a jury
> trial where Mr. Cuff provided an eyewitness account of
> the incident. In addition, Azeem Johns, a drug dealer
> who was in federal prison on a weapons charge,
> testified that [Petitioner] had admitted shooting a
> "crack fiend" inside Mr. Cuff's house because the man
> "had disrespected [Petitioner] in some type of way."
> N.T. Trial, 6/24/04, at 59-60. Based on this evidence,
> the jury convicted [Petitioner] of [burglary, second
> degree murder, and violating the Uniform Firearms Act],
> and the trial court imposed a life sentence for the
> murder conviction.

Commonwealth v. Shabazz, No. 3038 EDA 2006, slip op. at 1-3 (Pa. Super. Ct. Jan. 4, 2008) [hereinafter 2008 Super. Ct. Op.] (first alteration in original). Petitioner appealed, and the Superior Court affirmed his sentence on January 4, 2008. Id. at 9. The Pennsylvania Supreme Court denied allocatur on September 3, 2008. See Commonwealth v. Shabazz, No. 2668 EDA 2011, slip op. at 3 (Pa. Super. Ct. Mar. 19, 2013) [hereinafter 2013 Super. Ct. Op.].

On June 12, 2009, Petitioner filed a petition under the Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. §§ 9541-9546. Id. Petitioner's court-appointed counsel eventually filed a "no-merit" brief and a petition to withdraw, pursuant to Commonwealth v. Turner, 544 A.2d 927 (Pa. 1988) and Commonwealth v. Finley, 550 A.2d 213 (Pa. Super. Ct. 1988) (en banc). 2013 Super. Ct. Op. at 3. The PCRA court granted counsel's motion to withdraw and dismissed the PCRA petition on September 2, 2011.

3

Id. at 4. Upon Petitioner's appeal, the Superior Court affirmed the PCRA court's decision on March 19, 2013. Id. at 14.

Petitioner filed his Habeas Petition on April 30, 2013, asserting the following claims: (1) due process violation based on the trial court's failure to provide a proper cautionary instruction; (2) prosecutorial misconduct during closing argument; (3) ineffective assistance of counsel ("IAC") on direct appeal, for failing to challenge the trial court's inadequate cautionary instruction; (4) IAC for failing to request a more comprehensive cautionary instruction; (5) IAC for failing to object to prosecutorial misconduct during closing argument; (6) IAC for failing to interview three witnesses prior to trial; and (7) due process violation based on the trial court's decision to admit into evidence testimony concerning Petitioner's uncharged drug dealing. See Mem. Supp. Habeas Pet. 12-45, ECF No. 8 [hereinafter Pet'r's Mem.].

In response, the Commonwealth asserts that all of Petitioner's claims are either procedurally defaulted or were reasonably resolved by the state court. See Resp. Opp. Habeas Pet. 6-24, ECF No. 23 [hereinafter Gov't's Resp.]. Petitioner filed a reply on September 8, 2014. Pet'r's Traverse, ECF No. 29 [hereinafter Pet'r's Reply]. Upon referral, Judge Wells issued a report and recommendation on September 17, 2014, advising the denial of the Habeas Petition on the merits without an

evidentiary hearing and with no certificate of appealability. R&R 1, 19, ECF No. 30. Petitioner filed objections on December 3 and 11, 2014. Pet'r's Objections, ECF Nos. 34, 36.[2] The matter is now ripe for disposition.

## II.   LEGAL STANDARD

The Court may refer an application for a writ of habeas corpus to a magistrate judge for a report and recommendation. 28 U.S.C. § 636(b)(1)(B). A prisoner may object to the magistrate judge's report and recommendation within fourteen days after being served with a copy thereof. See 28 U.S.C. § 636(b)(1); E.D. Pa. R. 72.1.IV(b). The Court must then "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court does not review general objections. See Brown v. Astrue, 649 F.3d 193, 195 (3d Cir. 2011) ("We have provided that § 636(b)(1) requires district courts to review such objections de novo unless the objection is not timely or not specific." (internal quotation marks omitted)). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." § 636(b)(1).

---

[2]      The two briefs containing Petitioner's objections are substantially similar, although the second one includes some minor alterations. For simplicity, the Court will cite to the objections filed most recently.

Thus, the Court will conduct a de novo review of those portions of the Report and Recommendation to which Petitioner objects.

On habeas review, the Court must determine whether the state court's adjudication of the claims was (1) contrary to, or an unreasonable application of, clearly established federal law, or (2) based on an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. § 2254(d).

## III. DISCUSSION

Concluding that all of Petitioner's claims are either procedurally defaulted or were reasonably resolved by the state court, Judge Wells recommends that the Habeas Petition be denied without an evidentiary hearing, and with no certificate of appealability. R&R 18-19. Petitioner objects to Judge Wells' conclusions as to each of his seven claims.[3] Pet'r's Objections 6-8. The Court will treat each claim in turn--beginning with those that are, in fact, procedurally defaulted.

A.   Unexhausted and Procedurally Defaulted Claims

A habeas petitioner must "exhaust[] the remedies available in the courts of the State" before obtaining habeas relief. 28 U.S.C. § 2254(b)(1)(A). Traditionally, exhaustion in Pennsylvania required a petitioner to fairly present a claim to

---

[3]      Although some of his objections are more fleshed out than others, for completeness, the Court will treat them all.

the trial court, the Pennsylvania Superior Court, and the Pennsylvania Supreme Court. See Evans v. Court of Common Pleas, Del. Cnty, 959 F.2d 1227, 1230 (3d Cir. 1992). However, as of a May 9, 2000, order issued by the Pennsylvania Supreme Court, habeas petitioners are no longer required to seek allocatur from the Pennsylvania Supreme Court to exhaust state remedies. See Lambert v. Blackwell, 387 F.3d 210, 233-34 (3d Cir. 2004).

If the state courts have declined to review the merits of a petitioner's claim based on his failure to comply with a state rule of procedure, the claim is procedurally defaulted. See Harris v. Reed, 489 U.S. 255, 262-63 (1989). Procedurally defaulted claims cannot be reviewed unless "the [petitioner] can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."[4] Coleman v. Thompson, 501 U.S. 722, 750 (1991) (emphasis added).

To demonstrate cause, a petitioner must show that "some objective factor external to the defense impeded [petitioner's] efforts to comply with the State's procedural rule." Id. at 753

---

[4]     The "fundamental miscarriage of justice" exception is limited to cases of "actual innocence." Schlup v. Delo, 513 U.S. 298, 321 (1995). To demonstrate "actual innocence," a petitioner must present new, reliable evidence of his innocence that was not presented at trial. Id. at 324.

(internal quotation marks omitted). Examples of cause include: (1) "a showing that the factual or legal basis for a claim was not reasonably available"; (2) a showing that "some interference by [state] officials . . . made compliance [with the state procedural rule] impracticable"; and (3) "[a]ttorney error that constitutes ineffective assistance of counsel." Id. at 753-54 (internal quotation marks omitted).

      1.   Claim One – Due Process Violation Based on Trial Court's Inadequate Cautionary Instruction

Petitioner claims that the trial court violated his Fourteenth Amendment right to due process when it failed to give an adequate limiting instruction after Azeem Johns provided inadmissible testimony that Petitioner sold drugs on the day of the shooting. See Pet'r's Mem. 12-16. As properly found by Judge Wells, however, this claim is procedurally defaulted. R&R 6.

Because Petitioner first raised this claim during his PCRA proceedings, the Superior Court deemed the claim waived. See 2013 Super. Ct. Op. at 7 n.1 (citing 42 Pa. Cons. Stat. Ann. §§ 9543(a)(3), 9544(b)). Accordingly, claim one is procedurally defaulted, as this state procedural rule constitutes an "independent and adequate" state ground barring the exhaustion of the claim. See Coleman, 501 U.S. at 729-30.

Petitioner argues that Judge Wells' conclusion that he failed to exhaust claim one is erroneous. Pet'r's Objections 6.

In an attempt to back up this claim, he points to the appellate court's opinion, which noted that Petitioner "contend[ed] that the trial court erred in allowing Mr. Johns to testify that Appellant was a drug dealer." 2008 Super. Ct. Op. at 3. But this only shows that Petitioner challenged the testimony on appeal, and it says nothing about whether Petitioner challenged the adequacy of the Court's limiting instruction related to that evidence in his appeal--which he did not do.

As Petitioner has provided no new, reliable evidence of his actual innocence, the defaulted claim cannot be reviewed unless Petitioner can demonstrate cause and prejudice. In that vein, he asserts that trial and direct appellate counsel were ineffective for failing to raise the claim. See Pet'r's Mem. 21-28. This could constitute cause. See Coleman, 501 U.S. at 754. Nevertheless, as discussed infra Subsection III(B)(2)-(3), neither Petitioner's trial nor his direct appellate counsel were ineffective for omitting this claim. Thus, this claim must fail.

2.   Claim Two – Prosecutorial Misconduct During Closing Argument

Petitioner next claims that the prosecutor committed misconduct during closing argument, based on several "prejudicial and inflammatory remarks." Pet'r's Mem. 16-21. Again, as correctly determined by Judge Wells, this claim is procedurally defaulted. R&R 7.

9

As with claim one, Petitioner raised his prosecutorial misconduct claim in his PCRA appeal, but failed to raise it on direct appeal. Accordingly, the Superior Court found this claim waived. See 2013 Super. Ct. Op. at 9 (citing 42 Pa. Cons. Stat. Ann. §§ 9543(a)(3), 9544(b)). Petitioner resists this "erroneous analysis," but he offers only conclusory assertions that he "substantially presented" the claim on appeal. Pet'r's Objections 6. This, he did not do. Thus, for the reasons stated supra Subsection III(A)(1), this claim is also procedurally defaulted.

In claim five, Petitioner alleges that trial counsel was ineffective for failing to raise this claim. Pet'r's Mem. 28-33. This could constitute cause to excuse the default. See Coleman, 501 U.S. at 754. However, as will be further explained infra Subsection III(B)(4), trial counsel was not ineffective for not objecting to the prosecutor's remarks.

### 3.   Claim Six – Ineffective Assistance of Counsel for Failing to Interview Three Witnesses

In claim six, Petitioner argues that trial counsel's performance was deficient for his failure to interview two Commonwealth witnesses, Azeem Johns and Detective Boyle, and a potential defense witness, Mary Coles, prior to trial. Pet'r's Mem. 33-37. As noted by Judge Wells, however, the claims concerning Mary Coles and Detective Boyle are defaulted, as Petitioner omitted them from his PCRA appeal. R&R 7; see also

10

2013 Super. Ct. Op. at 12-13. Accordingly, these claims are unexhausted, see Lambert, 387 F.3d at 233-34, and--because the time to file a new PCRA petition has expired[5]--procedurally defaulted. See Keller v. Larkins, 251 F.3d 408, 415 (3d Cir. 2001). Additionally, the Superior Court found that the claim concerning Johns was waived, because it was not raised until PCRA appeal. See 2013 Super. Ct. Op. at 13 (citing Pa. R. App. P. 302(a)). Given that all three parts of claim six are defaulted,[6] and because Petitioner neither alleges cause and prejudice nor provides any new, reliable evidence of his innocence, these claims are not reviewable on their merits.

> ### 4.   Claim Seven – Due Process Violation Regarding Testimony of Petitioner's Drug Dealing

Petitioner also claims that the trial court violated due process when it allowed Azeem Johns to testify about Petitioner's drug dealing prior to the day of the shooting. Pet'r's Mem. 38-45. However, as Judge Wells correctly concluded,

---

[5]     Petitioner's conviction became final on December 8, 2008, when his time to seek certiorari in the U.S. Supreme Court expired. See Sup. Ct. R. 13.1; 42 Pa. Cons Stat. Ann. § 9545(b)(3). Petitioner had one year--until December 8, 2009--to file a timely PCRA petition. See § 9545(b)(1).

[6]     In his objection regarding claim six, Petitioner offers only conclusory assertions that Judge Wells' analysis was "erroneous," that he "substantially presented" claim six to the state courts, and that any "[d]efault should be excused pursuant to your Supreme Courts [sic] Cause and Prejudice Doctrine." Pet'r's Objections 6. But saying so does not make it so.

this claim is unexhausted and procedurally defaulted, given that Petitioner's direct appeal challenged this testimony based only on Pennsylvania's rules of evidence, not due process. R&R 8.

To exhaust a claim that a state court evidentiary ruling violates a petitioner's federal due process rights, the petitioner must expressly invoke due process in the state court. Duncan v. Henry, 513 U.S. 364, 366 (1995) (per curiam). On direct appeal, Petitioner claimed that the trial court should not have admitted evidence of his prior drug dealing, because it was irrelevant and unduly prejudicial, see 2008 Super. Ct. Op. at 6-- considerations which are relevant under Pennsylvania evidentiary law. Because Petitioner never invoked the due process clause on appeal, his due process claim is unexhausted. And even if Petitioner were to attempt to exhaust this claim in a new PCRA petition, it would be deemed waived. See 42 Pa. Cons. Stat. Ann. §§ 9543(a)(3), 9544(b). Thus, claim seven is procedurally defaulted. And because Petitioner has neither alleged cause and prejudice nor provided any new, reliable evidence of his actual innocence,[7] claim seven cannot be reviewed on its merits.

---

[7]     In his objection, Petitioner contends that "Claim 7 was clearly presented and addressed by the [2013] Superior Court Opinion at 7 ft. nt. 1[] [sic] and at . . . 8 and 9." Pet'r's Objections 7. But these citations merely point to references the Superior Court made to Petitioner's challenging the prejudicial nature of the testimony, as a matter of evidentiary law. Again, there is no indication that Petitioner ever raised this due process claim until the instant Habeas Petition.

B.   <u>AEDPA Review of Remaining Claims</u>

The Court will now turn to the remaining claims that the state courts addressed and dismissed on their merits. Any claims adjudicated by a state court must be considered under the deferential standard of review established by the Anti-Terrorism and Effective Death Penalty Act of 1996, ("AEDPA"), which provides that this court cannot grant habeas relief on a claim, unless the state court's adjudication of it:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Further, the state court's findings of fact must be presumed correct, and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. § 2254(e)(1).

A state court's judgment is contrary to Supreme Court precedent if the state court has applied a rule that contradicts the governing law set forth by the Supreme Court or if the state court confronts facts which are "materially indistinguishable" from a decision of the Supreme Court and the state court arrives at a different result from the Supreme Court. <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000). A state court decision constitutes

13

an unreasonable application of Supreme Court precedent if the state court has correctly identified the governing legal rule but applies it unreasonably to the facts of the petitioner's case. Id. at 407-08. And an unreasonable factual determination must be found "objectively unreasonable in light of the evidence presented in the state-court proceeding," Miller-El v. Cockrell, 537 U.S. 322, 340 (2003)--for instance, where the state court erroneously finds a fact that lacks any support in the record. Wiggins v. Smith, 539 U.S. 510, 528 (2003).

### 1.   Ineffective Assistance of Counsel Standard

Petitioner has advanced several IAC claims. Such assertions must be evaluated against the two-part test announced in Strickland v. Washington, 466 U.S. 668 (1984). First, a petitioner must establish deficient performance by showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688. The court's "scrutiny of counsel's performance must be highly deferential." Douglas v. Cathel, 456 F.3d 403, 420 (3d Cir. 2006) (citing Strickland, 466 U.S. at 689). Accordingly, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.

Second, the petitioner must establish prejudice by affirmatively proving that the alleged attorney errors "actually had an adverse effect on the defense." Id. at 693. "The

14

[petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

    If the petitioner fails to satisfy either prong of the Strickland test, there is no need to evaluate further, as the claim will fail. Id. at 697. Moreover, counsel cannot be found ineffective for failing to present an unmeritorious objection.

    2.    Claim Three – Direct Appellate Counsel Was Ineffective for Failing to Challenge an Inadequate Curative Instruction

    Petitioner claims that direct appellate counsel's performance was deficient for his failure to argue that the trial court gave an insufficient limiting instruction regarding Azeem Johns' inadmissible testimony. Pet'r's Mem. 21-25. Along with Judge Wells, R&R 12-13, this Court disagrees.

    Before Johns took the witness stand, the trial court ruled that he could mention that he and Petitioner had sold drugs together prior to the day of the crime on the block where the killing took place. 2013 Super. Ct. Op. at 7. As the Superior Court noted, "that information was [deemed] necessary[8]" and

---

[8]         "[G]iven Johns' testimony that appellant shot the victim because he was selling drugs out of Mr. Cuff's house and

15

admissible. Id. at 9. During his testimony, however, Johns stated
that Petitioner had also sold drugs on the day of crime--which
was outside of the scope that the trial court had allowed. Id. at
8. After defense counsel objected and moved for a mistrial, the
trial court struck the testimony as inadmissible, denied the
motion for mistrial, and instructed the jury to "disregard
[Johns'] statement." Id. at 7-8.

Petitioner alleges that the trial court should have
given additional instructions concerning the inadmissible
testimony--and that appellate counsel was ineffective for failing
to challenge the instruction that the trial court gave. Pet'r's
Mem. 21-25. But the Superior Court concluded that direct
appellate counsel was not ineffective, because no prejudice
resulted from the failure to give any additional instruction.
2013 Super. Ct. Op. at 9. For one, the court aptly observed that
"[t]he prejudice arising from the knowledge that [Petitioner] may
have sold drugs on the day of the shooting carries almost no
prejudice beyond that imparted by the prior revelation" that
Petitioner had been a drug dealer prior to the day of the crime."
Id. The Superior Court also concluded that Petitioner was not
prejudiced because the trial court had instructed the jury to

should not be doing that, it was vital that the Commonwealth be
permitted to also show that appellant had previously sold drugs
on the block; otherwise, the jury may have improperly attributed
some heroic motive to appellant's actions." Id. at 8.

16

disregard Johns' inadmissible testimony. Id. The Supreme Court has long held that jurors are presumed to follow the trial court's instructions. See e.g., Weeks v. Angelone, 528 U.S. 225, 234 (2000) (citing Richardson v. Marsh, 481 U.S. 200, 211 (1987)). Thus, the Superior Court's determination[9] that the trial court's instruction removed any prejudice was consistent with Supreme Court precedent and reasonable--particularly given the Superior Court's reasonable conclusion that the prejudicial nature of the inadmissible testimony was not substantial in light of the other evidence of his prior drug dealing activities. Absent prejudice, appellate counsel could not be ineffective for omitting the claim. Strickland, 466 U.S. at 687.

      3.   Claim Four - Trial Counsel Was Ineffective for Failing to Request a More Complete Cautionary Instruction

Petitioner also claims that his trial counsel's performance was deficient for his failure to request that the trial court provide a more complete curative instruction in regard to Azeem Johns' inadmissible testimony. Pet'r's Mem. 25-28. But the Superior Court found that his trial counsel IAC claim lacked merit for the same reasons that the direct appellate

---

[9]      Petitioner objects to this reading of the Superior Court's disposition of claims three and four--but he offers only empty assertions in response. See Pet'r's Objections 7.

counsel claim lacked merit: (1) "the prejudice involved in this further information is nearly insignificant," and (2) the trial court instructed the jury to disregard Johns' inadmissible testimony. 2013 Super. Ct. Op. at 8-9. As explained <u>supra</u> Subsection III(B)(2), the Superior Court's determination constitutes a reasonable application of Supreme Court precedent.

> 4.    <u>Claim Five – Trial Counsel Was Ineffective for</u>
>        <u>Failing to Object to Alleged Prosecutorial</u>
>        <u>Misconduct During Closing Argument</u>

Petitioner further argues that trial counsel was ineffective for failing to object to numerous instances of alleged misconduct during the prosecutor's closing statement. Pet'r's Mem. 28-33. Judge Wells concluded that, contrary to Petitioner's claim, the Superior Court reasonably determined that the claim lacked merit.[10] R&R 14-18. This Court agrees.

In his PCRA appeal, Petitioner asserted that trial counsel was ineffective for failing to object to allegedly prejudicial and inflammatory language statements given by the prosecutor in closing. The remarks at issue are underlined in the following excerpts, as recounted by the Superior Court:

> There's a second type of manslaughter called
> voluntary manslaughter, that being the heat

---

[10]    In his objection, Petitioner merely asserts that "[t]he Magistrate R&R is clearly erroneous on claim number 5 and needs to be modified in your Petitioner's favor." Pet'r's Objections 8.

of passion. We talk about heat of passion.
Heat of passion is literally I mean to kill
you, but I have an excuse for doing it. It
is that type of excuse that the law
recognizes as such that somehow you were
under such an overwhelming stimulus that you
didn't have time to correct your thoughts to
stop this killing. You think about it, if
you were to leave work early and you were to
go to your child's daycare to pick your
child up and you surprise the daycare
provider and you entered in from the back
door, and you see that daycare provider
sexually assaulting your child, you have
your gun on you that you're licensed to
carry. You take that gun out; you kill that
person and you mean to kill that person
because what that person did so overwhelmed
my thought process that in the heat of
passion I didn't have the time for cool
refection, I killed that person. The type is
almost – you think of it is almost like
temporary insanity. Compare that to this,
what we have here. There's an argument; he
walks off. He's gone for ten minutes and he
comes back with a gun and kills. Is that the
type of conduct that's not murder? Should
everyone now know with [Petitioner], this
particular circumstances [sic] that <u>having
an argument with [Petitioner] is like the
Surgeon General's Warning, it's hazardous to
your health, that if you could just argue
with the person, you then have a license to
kill?</u> I would suggest no. No. This is
nowhere near what the law recognizes as heat
of passion, voluntary manslaughter. And if
it's not manslaughter, then we have to talk
about murder.

Notes of testimony, 6/28/04 at 80-82 (emphasis added).

You know that when he left that argument, he
had a number of choices and decisions to
make. If he just wanted to strike this man,
he could have gone to the playground. He
could have picked up a bottle, a brick, a
bat anything to just hit, assault, strike

> this man. But that's not what he did. He
> left and he got this cannon of a gun, a
> Dirty Harry-sized gun and he went and got
> that gun and he knew that he wasn't supposed
> to have that gun. He knew that and he got it
> any way [sic]. And he took that gun. When he
> had the opportunity to think about what he's
> about to do, think about whether or not
> going into this house and confronting this
> man over this simple argument whatever it
> was outside, he knew when he got that gun
> what he was going to do with it.

Notes of testimony, 6/28/04 at 85-86 (emphasis added).

> And if you had any doubt whatsoever about
> that, any question as to whether or not it
> was with or without the specific intent to
> kill, you know what he said about it
> afterwards. He disrespected me. For
> disrespecting [Petitioner], you get to lose
> all of your tomorrows. For disrespect.

Notes of testimony, 6/28/04, at 89 (emphasis added).

2013 Super. Ct. Op. at 9-11.

The Superior Court analyzed this claim as follows:

> None of the indicated remarks represents the
> prosecutor's personal opinion as to [Petitioner's]
> guilt. In the first set of statements pertaining to
> the Surgeon General's Warning and the license to kill,
> the prosecutor was merely highlighting that the sort
> of argument that occurred between [Petitioner] and the
> victim was not of a nature that would amount to heat
> of passion that would reduce culpability to voluntary
> manslaughter. The prosecution indicated,
> appropriately, that a mere argument does not justify
> (a license to kill) killing someone.

> In the second comment, pertaining to Dirty Harry,
> the prosecution was not even referring to
> [Petitioner], but to the size of his gun. The
> prosecution was merely showcasing that [Petitioner]
> armed himself with a weapon that was likely to kill
> rather than merely injure.

20

> Finally, in the third statement, pertaining to losing all of your tomorrows for merely disrespecting [Petitioner], the prosecutor was essentially arguing that the malice element was met by the evidence. In sum, none of these remarks amounted to prosecutorial misconduct, but served legitimate purposes, and were, at most, oratorical flair. Counsel was not ineffective in failing to object to these remarks.

Id. at 11-12.

The Superior Court found that trial counsel was not ineffective, because the omitted claims lacked merit. This is consistent with Third Circuit cases, see, e.g., Johnson v. Tennis, 549 F.3d 296, 301 (3d Cir. 2008); United States v. Macon, 91 F. App'x 239, 242 (3d Cir. 2004), and it is a reasonable application of Strickland. See Fischetti v. Johnson, 384 F.3d 140, 149 (3d Cir. 2004) (holding that it is permissible to consider the decisions of lower federal courts which have applied clearly established Supreme Court precedent when deciding whether a state court's application of Supreme Court precedent was reasonable). Thus, the question is whether the Superior Court reasonably concluded that the prosecutorial misconduct claims lacked merit.

"A prosecutor's comments can create reversible error if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" United States v. Lee, 612 F.3d 170, 194 (3d Cir. 2010) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). "It is not enough that

the prosecutor's remarks were undesirable or even universally condemned," United States v. Liburd, 607 F.3d 339, 344 (3d Cir. 2010) (quoting Darden v. Wainwright, 477 U.S. 168, 181 (1986)) (internal quotation marks omitted), because the focus is on the fairness of the trial, "not the culpability of the prosecutor." Id. (quoting Smith v. Phillips, 455 U.S. 209, 219 (1982)) (internal quotation marks omitted). It is also relevant to consider whether the prosecutor misstated or manipulated evidence, or implicated other specific defense rights, such as the right to counsel or to remain silent. See Darden, 477 U.S. at 181-82.

Here, the comments did not implicate any defense right, nor did they misstate or manipulate any evidence. As the Superior Court correctly determined, the first comment was an attempt to convince the jury to draw an inference favorable to the prosecution from the circumstances surrounding the shooting; the second comment referred to the size of Petitioner's gun, and was calculated to convince the jury that the weapon indicated that Petitioner intended to kill the victim; and with the last comment, the prosecutor was attempting to convince the jury that Petitioner acted with the specific intent to kill the victim--a crucial element of first degree murder. See 2013 Super. Ct. Op. at 11-12. The Superior Court reasonably and correctly held that these remarks did not constitute prosecutorial misconduct. And

because the Superior Court reasonably concluded that none of the challenged comments constituted misconduct, there was no basis to find counsel ineffective for failing to object. Therefore, this claim falls along with the others.

## IV.   CERTIFICATE OF APPEALABILITY

A petitioner seeking a Certificate of Appealability must demonstrate "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El, 537 U.S. at 327. The Court will not issue a Certificate of Appealability because Petitioner has not made a substantial showing of the denial of his constitutional rights. See Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

## V.   CONCLUSION

For the reasons provided, the Court will approve and adopt Judge Wells' Report and Recommendation, overrule Petitioner's objections thereto, and deny the Petition for a Writ of Habeas Corpus without an evidentiary hearing or a Certificate of Appealability. An appropriate order follows.